**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

-----------------------------------------------------------------X
TECH SYSTEMS, INC.

           Index No.: 1:12-cv-374(GBL)(JFA)

     *Plaintiff,*

   -against-

LOVELEN PYLES and JOHN and JANE DOES 1-10,

     *Defendants.*
-----------------------------------------------------------------X

**MEMORANDUM IN FURTHER OPPOSITION TO DEFENDANT'S**
**MOTION TO STRIKE BREACH OF FIDUCIARY CLAIM (TAKEN**
**UNDER ADVISEMENT) AND IN SUPPORT OF CLAIMS FOR**
<u>**ATTORNEYS' FEES AND PERMANENT INJUNCTIVE RELIEF**</u>

Respectfully submitted,

Eric Crusius (VA Bar No. 77860)
Dov Szego (VA Bar No. 44586)
Stephen Ramaley (VA Bar No. 82549)
Centre Law Group, LLC
*Attorneys for Plaintiff*
1953 Gallows Road, Suite 650
Vienna, Virginia 22182
Telephone: (703) 288-2800
Facsimile: (703) 288-4868
<u>ecrusius@centrelawgroup.com</u>
<u>dszego@centrelawgroup.com</u>
<u>sramaley@centrelawgroup.com</u>

# TABLE OF CONTENTS

## Contents

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 4

PROCEDURAL BACKGROUND .......................................................................................... 4

RELIEF SOUGHT ................................................................................................................. 5

FACTS ................................................................................................................................... 6

    B.    Defendant's Campaign of Harassment Began Before This Matter Was Filed, Has
Continued After Filing, and Even After Judgment Demonstrating the Need for Continuing
Injunctive Relief ................................................................................................................ 10

ARGUMENT ........................................................................................................................ 13

    A.    Plaintiff's Fiduciary Duty Claim Is Firmly Grounded In Fact and Law, And The
Judgment on This Claim Should Not Be Overturned By This Court ..................................... 13

        1.    As A Matter Of Law, The Defendant Owed Her Employer A Fiduciary Duty ......................... 14

    B.    This Court Should Enter An Award Of Attorney's Fees And Costs .............................. 18

    C.    This Court Should Enter A Permanent Injunction Against the Defendant, Or At Least
Extend The Existing Injunction .......................................................................................... 24

        1.    A Permanent Injunction Is Appropriate In This Case ................................................. 26

        2.    At A Minimum, Given The Demonstrated Harm And Other Circumstances Of This Case, This
Court Should Extend The Existing Injunction For Not Less Than Three (3) Years ........................... 30

CONCLUSION ..................................................................................................................... 30

CERTIFICATE OF SERVICE .............................................................................................. 32

# TABLE OF AUTHORITIES

## Cases

*Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1 (1984) ............................... 25

*Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987)............................................ 26

*Avalon Bay Communities, Inc. v. Willden*, 2009 WL 2431571 (E.D.Va.).................................... 13

*Banks v. Mario Industries of Virginia, Inc.*, 274 Va. 438, 650 S.E.2d 687 (2007) ..................... 16

*Carpenter v. United States*, 484 U.S. 19 (1987) ......................................................................... 17

*Credit Co. v. Russell*, 234 Ga. 765, 218 S.E.2d 54 (1975) ......................................................... 25

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).......................................................... 26

*Feddeman & Co. v. Langan Assoc.*, 260 Va. 35, 530 S.E.2d 668 (2000).................................... 16

*Ferguson v. Arthur*, 117 U.S. 482 (1886) ................................................................................... 14

*Galaxy Computer Services, Inc. v. Baker*, 2005 WL 2171454 (E.D.Va., 2005) ......................... 26

*Hilb, Rogal & Hamilton Co. v. DePew*, 247 Va. 240 (1994) ................................................. 13, 16

*Horne v. Holley,* 167 Va. 234, 188 S.E. 169 (1936) ..................................................................... 15

*House v. Giant of Maryland LLC*, 232 F.R.D. 257 (E.D.Va. 2005) ............................................. 23

*Laughlin v. Metro. Washington Airports Auth.*, 952 F.Supp. 1129 (E.D.V.A., Alexandria, 1997) .................................................................................................................................... 13, 14, 17

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994)........................................................ 25

*National Legal Research Group v. Lathan,* 1993 WL 169789 (W.D.Va. 1993).................... 16, 17

*New York Times Co. v. U.S.*, 403 U.S. 713 (1971) ....................................................................... 25

*O'Brien v. University Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975) .................................................................................................................................... 25

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973) 24, 25

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1 (1974) .................................... 24

*Schenck v. Pro-Choice Network Of W. N.Y.,* 519 U.S. 357 (1997) .............................................. 25

*Tryco, Inc. v. U.S. Medical Source, L.L.C.*, 80 Va. Cir. 619, 2010 WL 7373703 (Va.Cir.Ct. 2010) .................................................................................................................................... 13, 16

*U.S. v. Czubinski*, 106 F.3d 1069, 1074 (1st Cir.1997) ............................................................... 15

*U.S. v. Martin,* 228 F.3d 1 (1st Cir. 2000) ................................................................................... 14

*Vance v. Universal Amusement Co., Inc.,* 445 U.S. 308 (1980) (*per curiam*)............................. 25

*Wagner Equipment Co. v. Wood*, 2012 WL 4466644 (D.N.M., September 24, 2012) ............... 25

*Williams v. Dominion Technology Partners, L.L.C.*, 265 Va. 280, 576 S.E.2d 752 (2003)......... 16

## Statutes

18 U.S.C. § 1030(g) ..................................................................................................................... 24

18 U.S.C. §2701, *et seq.*............................................................................................................... 18

18 U.S.C. §2707.......................................................................................................................... 18

18 U.S.C. §2707(b)(3) ................................................................................................................. 18

18 U.S.C. §2707(c) ............................................................................................................. 18

29 U.S.C. § 1181 *et seq.* ...................................................................................................... 15

Va. Code §18.2-152.12 ........................................................................................................ 18

**Other Authorities**

*Blacks Law Dictionary* 625 (6th ed. 1990) ....................................................................... 16

**Rules**

Federal Rules of Civil Procedure 37(c)(2) ..................................................................... 20, 23

## PRELIMINARY STATEMENT

The Plaintiff, Tech Systems, Inc. ("Tech Systems" or "TSI" or "Plaintiff") filed its

Complaint against Defendant Lovelen Pyles (hereinafter "Defendant" or "Pyles") in this matter

on April 5, 2012 as a result of the acts of Ms. Pyles and others related to her employment with

Tech Systems and the termination thereof.

At the conclusion of the trial, the jury awarded $300,000 in compensatory and punitive

damages to Plaintiff and against Defendant covering all of the claims that were sent to the jury.

Following the conclusion of the jury trial, the Court instructed Plaintiff to brief the

following issues:

> a.     Whether Defendant Lovelen Pyles owes/owed a fiduciary duty to Tech
>
> Systems to protect confidential as well as proprietary information.
>
> b.     Whether Tech Systems is entitled to its attorney's fees, and if so, in what
>
> amount?
>
> c.     Whether Tech Systems is entitled to a permanent injunction.

Tech Systems respectfully submits that based on the evidence adduced at trial and the law

and arguments cited in oral argument at trial and in this brief herein, that each of the above

questions should be answered in the affirmative.

## PROCEDURAL BACKGROUND

The Complaint, filed on April 5, 2012, alleges claims of the Computer Fraud and Abuse

Act (Count I), Breach of Fiduciary Duty (Count II), Breach of Contract (Count III), violation of

the Virginia Computer Crimes Act (Count IV), Trespass (Count V), Misappropriation of Trade

Secrets (Count VI), and violation of the Electronic Communications Privacy Act (Count VII).  A

trial by jury was held from December 12, 2012 to December 14, 2012 before the Honorable

District Judge Gerald Bruce Lee.  *See* Dkt. Nos. 125, 128, 132.  During the trial Plaintiff

successfully moved to dismiss its Misappropriation of Trade Secrets claim with prejudice, and at

the close of Plaintiff's evidence this Court denied in part and granted in part Defendant's Motion

to Strike, striking the Breach of Contract claim (Count III), taking under advisement the Motion

to Strike the Breach of Fiduciary Duty claim, and leaving the remaining claims (including the

Breach of Fiduciary claim) to be decided by the jury. *See, e.g.*, Dkt. No. 128.  After being

charged by the Court with instructions agreed to by both parties (*id.*), the jury deliberated for

several hours and ultimately returned a verdict for the Plaintiff on all claims submitted to it —

claims of Computer Fraud and Abuse, Breach of Fiduciary Duty, violation of the Virginia

Computer Crimes Act, Trespass, and violation of the Electronic Communications Privacy Act —

awarding punitive damages on each claim where such damages were available.  *See* Dkt. No.

133, 134, 136.

## RELIEF SOUGHT

Plaintiff requests an Order:

1.    Denying Defendant's Motion to Strike its Breach of Fiduciary Duty claim and

leave in place the jury's judgment on that claim;

2.    Granting permanent injunctive relief, or alternatively, extending and expanding

the injunctive relief currently in place for a specified length of time;

3.    Awarding Plaintiff its reasonable fees, costs, and expenses incurred in these

proceedings — in the amount of $297,483.68 (already paid) plus an estimated

$24,000 in fees for post-trial motion practice; and

4.    Awarding such other and further relief as is meet and proper.

**FACTS**

Limiting the discussion to those facts presented at trial and relevant to the issues upon which the Court sought argument, Tech Systems employed Defendant from October 17, 2011 through April 2, 2012.  *See* Dkt. No. 1.  The testimony at trial, the unanimous verdict of not 6 (six) but 8 (eight) jurors on all counts presented for judgment, and even this Court's preliminary factual findings resulting in the granting of a Temporary Restraining Order and Preliminary Injunction, *see, e.g.*, Dkt. No 7, demonstrate that Defendant intentionally damaged Tech Systems' computer systems by intentionally accessing Tech Systems' computer systems without authorization.  The evidence, including the Defendant's own testimony when called for direct examination by the Plaintiff, showed that Pyles had lied on her resume, lied repeatedly about absences from work, and asked her boyfriend Chris Torre to lie for her (which he admitted in his testimony to doing) on at least two occasions that relate to her employment with Tech Systems and the trial.  On the question of her fiduciary duty, the evidence, the Court's granting of a Temporary Restraining Order and Preliminary Injunction, and the jury's verdict clearly show that Defendant had contacted customers with information that she knew could jeopardize customer relations, and had posted private and confidential information about individual employees online and sent such information to various employees in the company who were not privy to that information.  *See, e.g.,* Pl.'s Exs. 7, 79, 147, 148.

     **A.**     **Defendant's Improper Disclosure of Confidential Information**

For example, Plaintiff's Trial Exhibit ("PE") 149 includes an e-mail chain forwarded from Ms. Pyles to Tech Systems' largest teaming partner, Northrop Grumman, that included internal Tech Systems' correspondence critical of Northrop Grumman. Importantly, Ms. Blethen testified that the individual who received the e-mail from Ms. Pyles plays a large role in whether Northrop Grumman would continue to team with Tech Systems.

Further, PE 148 is an e-mail chain containing a memorandum by a Tech Systems employee critical of another employee that was forwarded to Lovelen Pyles, Anne Rohall, and Jose Andrade.  After reviewing the memorandum, Ms. Rohall stated:

> "Given the back and forth negativity between Maurice and Tim, are we at the point where one of them has to go? . . . I have about had it with the back and forth "tattle tale" memos they keep sending us . . . ."

Following her termination and without authority, Ms. Pyles forwarded that e-mail chain (including the critical language and the memorandum) to the parties named within.

PE 7 is an email, sent from Defendant's Blackberry to Tech Systems employees, teaming partners, and military personnel, which stated:

> "I guess if I was having sex with the boss (Anne) like Jose is, I wouldn't have gotten fired.  I would have been given several changes, a slap on the wrest [sic] and receive a created, fake unneeded job. Special Perks!!!"

PE 79 is a lengthy online post from the user name "Terry Jones" that disclosed confidential information (on the Nuizer.com website) learned by Ms. Pyles during her employment, including:

- that [Redacted] "fired many people,"

- that [Redacted] had been "written up several times, placed on [a performance improvement plan] and demoted from [Redacted]" and that this person's mistakes were overlooked due to a personal relationship with someone in a management position within the company.

- The company created a fake position for an employee [employee was named] who was in a relationship with someone in the management of the company.

- Whether the company has been gaining or losing business recently and the financial status of the company.

- One of the employees [employee was named] was disrespected in front of their peers.  Ms. Pyles states that she had several discussions with the employee [employee was named] regarding the employee's [employee was named] treatment at the company.

7

- The posts also purported that [Redacted], had been fired for "ruining the business."

- The company has "horrible and unethical business practices."

- The company was "not paying their staff according to the [statutory basis redacted] 2012 and under paying them."[1]

Notably, Plaintiff moved to hold Ms. Pyles in contempt of court after this post was made. In response, Ms. Pyles denied making the post under oath. Dkt. No. 26. At trial, Plaintiff established that this denial was perjurious. More specifically, Ms. Pyles testified in a declaration under the penalties of perjury that:

- "I did not post any comments on any news articles regarding the above-caption case on the website Nuizer.com or on Facebook." *See* Dkt. No. 26, Para. 2.

- "I do not recognize the usernames Carlis_Bender@yahoo.com or Terry Jones." *See* Dkt. No. 26, Para. 3.

- "I never supplied my statement nor any other TSI personnel information to or over Nuizer.com or Facebook nor under the usernames Terry Jones…" *See* Dkt. No. 26, Para. 4.

At the end of the declaration, Ms. Pyles signed the following statement:

"I, Lovelen Pyles, on this 22nd day of May, 2012, hereby certify and declare under penalty of perjury pursuant to the laws of the United States of America and the State of Maryland that the facts stated in the foregoing Declaration are true and correct to the best of my knowledge, information and belief."

Ms. Pyles' false declaration submitted to this Court (for a contempt motion in which she prevailed in part because of her denials) was followed by a doctored exhibit later in the case — the record *literally* includes a document falsified by Pyles. Dkt. 87-8. Nevertheless, Tech

---

[1] Interestingly, the post often moved from third-person to first-person.

Systems was able to establish at trial that Ms. Pyles was the originator of this post and the e-mails improperly disclosing confidential information.  To wit, TSI called a forensic analyst, Mr. Chris Racich of Vestigant LLC, to link Ms. Pyles to this post. Mr. Racich provided *unrebutted* testimony that the user name "Terry Jones" had been used on Ms. Pyles' work computer under her TSI user name during the period of her employment.  Pl.'s Ex. 99.

Notably, in Pyles' testimony after the Court took the Breach of Fiduciary Duty claim under advisement, she did not deny sending emails to Tech Systems' employees and clients after being told she was fired.  Instead, though it was obviously not credible to the jury, she testified that despite being told she would be fired and that she should not come in to work, she sent these various emails as part of her job.  However, she was unable to explain why she would forward, without text accompaniment, information and emails criticizing certain employees to those employees and others.

In addition to the testimony and documentary evidence, the Court provided the jury with an instruction, Instruction 32, regarding spoliation of evidence.  This instruction was sought by Plaintiff and awarded by Magistrate Judge John F. Anderson.  Dkt. No. 103.  The instruction was then affirmed by the trial Court, *see* Dkt. No. 121, and espoused the Court's finding that "Defendant deleted […] data [from her company-owned Blackberry] prior to returning the Blackberry to Tech Systems and has otherwise failed to produce the deleted data."  Dkt. No. 103. The Order and the resulting instructions informed the jury that it could infer:

1.  That, both before and after her termination from employment with Tech Systems, Defendant Lovelen Pyles sent emails using the Blackberry provided to her for use connected to her employment by Plaintiff Tech Systems, Inc.;
2.  That at least some of those emails included confidential information that Defendant Lovelen Pyles was prohibited from distributing;
3.  That, as a result of the employment agreement signed by her, Defendant Lovelen Pyles knew that she was prohibited from distributing the information included in those emails; [and]

4.  That Defendant Lovelen Pyles deleted those emails and formatted the Blackberry to prevent their use against her in this lawsuit.

Because of the destruction of evidence resulting from the deletion of the Blackberry, Plaintiff, the jury, and ultimately this Court will never know exactly how many emails, regarding what subject matters, were sent by the Defendant, or to whom those emails were sent following her termination from employment and using the company Blackberry.

**B.      Defendant's Campaign of Harassment Began Before This Matter Was Filed, Has Continued After Filing, and Even After Judgment Demonstrating the Need for Continuing Injunctive Relief**

Plaintiff's Complaint alleged that in the days following Ms. Pyles' termination, she engaged in a campaign of harassment to disrupt Tech Systems' operations, ridicule and embarrass its employees, and demean its reputation in the committee.  This campaign included the above mentioned emails, *supra* Section V, but also included crass emails directed toward TSI management (*see* Pl.'s Exs. 4, 6), attempts to gain unauthorized access to TSI's employee benefits system (*see* Pl.'s Exs. 31, 132), and harassing text messages and voicemails (*see* Pl.'s Ex. 137).[2]  In the weeks and months following the filing of the Complaint in this matter, Ms. Pyles continued her harassment via online posts.  *See* Dkt. 78-4.  These posts were created by user names such as CMK Bender, Carlis Bender, carlisbender@yahoo.com, Terry Jones, TJ6241, and others.  *Id.*  Over the course of the litigation, from mid-April through late July 2012, these user names published additional posts that included confidential information as well as statements that defame TSI, Anne Rohall, and Nancy Blethen.  *See id.*

In response to these posts, Plaintiff obtained evidence showing that Defendant Lovelen Pyles had used these aliases in the past, and that at least several of the posts originated from her

---

[2] *See also* the testimony of Nancy Blethen.  Ms. Blethen testified that she received a voicemail from Ms. Pyles that stated Ms. Rohall was defrauding the government by obtaining assistance for her daughter's medical issues.

home internet protocol ("IP") address.  Christopher Racich, President of Vestigant LLC,

conducted a forensic analysis of the computer that Ms. Pyles used while employed at TSI.  An

examination of Ms. Pyles' work computer revealed that between January 11, 2012 and April 2,

2012 (when Defendant was still employed by TSI and using said computer), Ms. Pyles had used

the email carlisbender@yahoo.com forty-five (45) times.  *See* Pl.'s Ex. 99.  Ms. Pyles used the

name "Terry Jones" at least once on March 23, 2012.  *Id.*  Furthermore, Calvin Trinidad,

Custodian of Records for CBS Interactive, Inc. responded to a subpoena served by Plaintiff's

counsel with information that Ms. Pyles' personal email address, ly2776@yahoo.com, was used

to registered the user name "TJ6241", which is the source of a defamatory post published on

June 21, 2012 around 9:00 PM, Pacific Standard Time.  *See* Dkt. 78-7.  Mr. Trinidad also

provided a computer printout stating that this post originated from IP address 108.28.2.162,

which Defendant had previously identified in court filings as the IP address for her home.  *Id.*

Furthermore, Mr. Trinidad stated that another post was registered to the email address

carlisbender@yahoo.com, which according to Mr. Racich's finding above, is an email Defendant

has used since January 2012.  *See* Pl.'s Ex. 99; Dkt. 38-7.  Finally, on September 17, 2012, Sam

Veazey, Executive Vice President of Corporate Finance for Reply!, Inc. provided Plaintiff with

information that several defamatory posts on merchantcircle.com came from Username:

CMKBender and email address carlisbender@yahoo.com.  Moreover, Mr. Veazey indicated that

these posts originated from Defendant's IP address — 108.28.2.162.  *See* Dkt. 78-9.

    Defendant's harassment has not abated even after the trial in this matter concluded on

December 14, 2012.  The following Monday morning December 17, 2012, Plaintiff's counsel

Eric Crusius and Dov Szego received suspicious email "spam," putatively from an internal

Centre Law Group fax server, but "cc'ed" to "<u>ctorre@centrelawgroup.com</u>," a non-existent

email address corresponding to the Defendant's boyfriend "Chris Torre." *See Declaration of Eric Crusius*, Ex. C. There is no such internal Centre Law Group fax server, and Centre has no "ctorre@centrelawgroup.com" email address, though, if Chris Torre were an employee of Centre Law Group that would be his email address. *Id.* Upon information and belief, given the proximity to the trial date and the similarity of the email address to the name "Chris Torre," who testified on Defendant's behalf at trial, this was a "phishing attempt" or other spam originated by Defendant or at her direction.

Beginning on or about December 29, 2012 counsel Eric Crusius and Stephen Ramaley, as well as Tech Systems' corporate officers Nancy Blethen and Anne Rohall (both of whom testified against the Defendant at trial), and a number of other employees, clients, and other affiliates of Tech Systems received connection invitations from a user by the name of Lovelen Pyles on the professionally-oriented social networking website "LinkedIn." *See Declaration of Nancy Blethen; Declaration of Eric Crusius*, Ex. B. Upon information and belief, several of the Plaintiff's customers and affiliates *accepted* the invitation from Lovelen Pyles, mistakenly believing that she is still employed by or affiliated with Tech Systems. *Id.* Finally, on January 8, 2013 Plaintiff's counsel again received suspicious email from the same internal Centre Law Group fax server, directed to "ctorre@centrelawgroup.com" as well as Eric Crusius and Dov Szego. *See Declaration of Eric Crusius*, Ex. B. Later that week, on January 10, 2013, Dov Szego received a suspicious eBay "payment received" notice cc'ed to the "ctorre@centrelagroup.com" email address. *Id.*

**ARGUMENT**

**A.     Plaintiff's Fiduciary Duty Claim Is Firmly Grounded In Fact and Law, And The Judgment on This Claim Should Not Be Overturned By This Court**

In responding to Defendant's Motion for Summary Judgment, Dkt. No. 94, and at trial in response to the Defendant's Motion to Strike Plaintiff's Breach of Fiduciary Duty Claim, Plaintiff's counsel presented to the Court several cases regarding the breadth and depth of fiduciary duties owed by employees to employers in Virginia.  These cases included *Avalon Bay Communities, Inc. v. Willden*, 2009 WL 2431571, at *11 (E.D.Va.) ("In general, an employee's fiduciary duty to his employer prohibits the employee from acting in a manner adverse to his employer's interest.") (quoting *Hilb, Rogal & Hamilton Co. v. DePew*, 247 Va. 240 (1994)); *Tryco, Inc. v. U.S. Medical Source, L.L.C.*, 80 Va. Cir. 619, 2010 WL 7373703, at *2 (Va.Cir.Ct. 2010) (A fiduciary duty "continues after the employment relationship has ended until the confidential information known to the employee is no longer valuable to the former employer . . . .").  This Court expressed its understanding that an employee's fiduciary duty in Virginia extends to proprietary information, such as customer lists, but the Court was concerned that such a duty may not cover private or confidential information.  Accordingly, District Judge Lee asked the parties to brief this issue.

This Court itself has held in *Laughlin v. Metro. Washington Airports Auth.*, 952 F.Supp. 1129, 1137 (E.D.V.A., Alexandria, 1997), that "[i]n addition to [a] duty of loyalty, an employee is a fiduciary with respect to the information which comes to him in the course of his employment."  The Court further held that:

> … it is a breach of the employee's obligations of honest and faithful service to purloin and disseminate the employer's documents, particularly those which deal with matters so intrinsically sensitive as personnel disputes. That approach necessarily flows from the fundamental premise that an employee owes the employer a duty of loyalty and faithful service which, of course, is a central tenet of the employment relationship.

13

***** 

**Although these principles most often come into play in cases involving proprietary materials purloined by an employee, they are no less applicable to an employee's obligations with respect to sensitive, non-proprietary documents.**

Id. (emphasis added).  In *Laughlin*, the employee disseminated the same kind of confidential personnel information at issue here.

## 1.    As A Matter Of Law, The Defendant Owed Her Employer A Fiduciary Duty

Besides this Court's explicit holding in *Laughlin* under very similar circumstances, logic dictates that Ms. Pyles owed a fiduciary duty to Tech Systems.  It is the Plaintiff's position that the information disseminated by Pyles through her posts to the Internet was not merely "private" or "confidential," but "proprietary" in the same sense as any customer list.  Dictionary.com defines "proprietary" in part to mean "belonging to a proprietor," "belonging or controlled as property."  *See Ferguson v. Arthur*, 117 U.S. 482 (1886) ("'Proprietary' is defined thus in the Imperial Dictionary: 'Belonging to ownership; as, proprietary rights.' In Webster: 'Belonging or pertaining to a proprietor' — 'proprietor' being defined [as] 'One who has the legal right or exclusive title to anything, whether in possession or not; an owner.' In Worcester: 'Relating to a certain owner or proprietor.'")  Even though the Court struck Plaintiff's Breach of Contract Claim[3], the record includes the Plaintiff's employee handbook, PE 129, and Pyles' signature acknowledging the responsibilities included therein.  Specifically, page 28 expresses Tech Systems' *proprietary* interest in confidential information obtained by employees through their employment.  *See, e.g.*, *U.S. v. Martin,* 228 F.3d 1, 16 (1st Cir. 2000) *(citing U.S. v. Czubinski,*

---

[3]    Exception to that ruling was properly noted at trial, and Plaintiff hereby further preserves its exception.

106 F.3d 1069, 1074 (1st Cir.1997)) ("Confidential information may be considered property for the purposes of §§ 1341 and 1343 [mail and wire fraud].").

In this case, information such as private relationships between coworkers, executives' complaints about employees, and the health issues of Anne Rohall's children (apart from being private under Federal law, *see* HIPAA, 29 U.S.C. § 1181 *et seq.*) were obtained by Pyles as an agent of Tech Systems *in her capacity as such an agent*.  She was aware, through the handbook, that she was prohibited from disseminating confidential information obtained through her employment, and therefore that Tech Systems intended to exert ownership and control over such information.  In terms of the harm caused by such disclosures, there is no distinction between disseminating customer lists, which may dilute client resources, and disseminating private employee information, which demeans the company before its clients, causes the affected employees to harbor ill will toward the company, and may even motivate the employee to leave the company.  Accordingly, the unauthorized disclosures in this case were at least as likely to cost Tech Systems clients as the dissemination of its customer lists would be.

### a)      In Virginia All Employees, And Managers In Particular, Owe Their Employers Fiduciary Duties

Defense counsel argued at trial that Pyles' position as a "mere" manager of Human Resources precluded her from having any fiduciary obligations to Tech Systems.  This argument has no basis in law because in Virginia all employees owe a fiduciary duty to their employer.  There is no magic bright line separating certain categories of employees from others.  In Virginia, "It is well settled that an agent is a fiduciary with respect to the matters within the scope of his agency." *Horne v. Holley,* 167 Va. 234, 241, 188 S.E. 169, 172 (1936).  More directly, the Virginia Supreme Court has held that, "We have long recognized that under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his

employer during his employment." *Williams v. Dominion Technology Partners, L.L.C.*, 265 Va. 280, 289, 576 S.E.2d 752 757 (2003); *see Hilb, Rogal & Hamilton Co. v. DePew*, 247 Va. 240 (1994); *Tryco, Inc. v. U.S. Medical Source, L.L.C.*, 80 Va. Cir. 619, 2010 WL 7373703, at *2 (Va.Cir.Ct. 2010) (stating that an employees' fiduciary duties continue after their employment ends.); *Banks v. Mario Industries of Virginia, Inc.*, 274 Va. 438, 650 S.E.2d 687 (2007) (holding that a lighting company manager owed a fiduciary duty to his employer). Defendant has not cited nor is Plaintiff aware of any Virginia precedent making a distinction between management employees and other employees with respect to the fiduciary duty of loyalty.

> **b)** **An Employee owes a duty to protect not just proprietary but also confidential information.**

Even if this Court finds that the information disseminated by Pyles was confidential but not proprietary, fiduciary duties include a duty to safeguard such confidential information. Black's Law Dictionary defines fiduciary duty as "[a] duty to act for someone else's benefit, while subordinating one person's interest to that of the other person. It is the highest standard of duty implied by law[.]" *Blacks Law Dictionary* 625 (6th ed.1990). The terms "fiduciary duty" and "duty of loyalty" are often used interchangeably and, in fact, sometimes referred to together as a "fiduciary duty of loyalty." *See, e.g., National Legal Research Group v. Lathan,* 1993 WL 169789, *5 (W.D.Va. 1993) (*"Lathan's fiduciary duty of loyalty"*). The duties imposed by law upon employees, including Pyles, are not intended to be so narrow or specific that an employer must point to some talismanic list that has been clandestinely taken to prove a breach. Instead, the law imposes upon employees the obligation to refrain from using *any* information not publicly available and obtained through employment in a way that will harm their employer.

In *Dominion Technology Partners,* 265 Va. at 291, 576 S.E.2d at 758 (citing *Feddeman & Co. v. Langan Assoc.*, 260 Va. 35, 42, 530 S.E.2d 668, 672 (2000)), the Virginia Supreme

Court set forth what it called an "indicative, and "by no means exhaustive" list of potential breaches of fiduciary duties by employees — who was in that case an at-will hourly (rather than salaried) employee.  On this list are the solicitation of an employer's clients and the misappropriation of trade secrets, but the court also included the "misuse[ of] confidential information."  This Court itself has held, in *Laughlin v. Metro. Washington Airports Auth.*, 952 F.Supp. 1129, 1137 (E.D.V.A., Alexandria, 1997), that "[i]n addition to [a] duty of loyalty, an employee is a fiduciary with respect to the information which comes to him in the course of his employment."  *Id.* (quoting *National Legal Research Group*, 1993 WL 169789, *5).  Quoted by the *Laughlin* court, the U.S. Supreme Court has taken that concept to its logical end: "even in the absence of a written contract, an employee has a fiduciary obligation to protect confidential information obtained during the course of his employment."  *Carpenter v. United States*, 484 U.S. 19, 27 (1987).

The breach complained of is one of Pyles' *duty*.  While Pyles' intent in disseminating Tech Systems' information is not dispositive in determining her duties, it is instructive; the evidence overwhelmingly showed and the jury clearly found that Pyles disseminated this information, in conjunction with other acts including sabotage, *for the express purpose* of doing harm to Tech Systems.  There was no legitimate purpose for making known the confidential information other than to damage Tech Systems.  Referring to the Blacks Law definition of "fiduciary duty," she *intended* to act against Tech System's benefit, and she *intended* to put her interests, including revenge, above those of Tech Systems.

Accordingly, Plaintiff's respectfully requests that the Court deny Defendant's Motion (Taken Under Advisement) to Strike Plaintiff's Fiduciary Duty Claim.

**B.      This Court Should Enter An Award Of Attorney's Fees And Costs**

Plaintiff sought relief, and received jury awards for both damages ($22,500) and punitive damages ($22,500), under Va. Code §18.2-152.12, the Virginia Computer Crimes Act.  *See* Dkt. No 136.  This statute allows an aggrieved party to recover "the costs of suit" — a term broader in scope than merely attorney fees — for an act violating the statute "regardless of whether such act is committed with malicious intent."  Of course, the jury's award of punitive damages makes apparent its finding that there was, in fact, "malicious intent" in this case.  *See* Instructions 18, 30.

Plaintiff also sought relief, and received a jury award for both damages ($60,000) and punitive damages ($75,000), under 18 U.S.C. § 2701, *et seq.*, the Electronic Communications Privacy Act.  *See* Dkt. No 136.  18 U.S.C. § 2707 creates a right to a civil action for violation of that act, including, within the Court's discretion, a right to "a reasonable attorney's fees and other litigation costs reasonably incurred" where "the conduct constituting the violation is engaged in with a knowing or intentional state of mind."  18 U.S.C. §2707(b)(3).  In fact, 18 U.S.C. §2707 provides *twice* for the possibility of a fees award, including language at 18 U.S.C. §2707(c): "In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court."

The Court instructed the jury regarding the Electronic Communications Privacy Act, *see* Instructions 24 and 26, and informed that the jury could assess punitive damages if it found that Pyles actions were "willful or intentional."  Instruction 26.  Given the award of punitive damages, and particularly that the punitive damages award exceeded the compensatory damages award, it is clear that the jury found Pyles actions to be "willful or intentional."

Independent of the jury's verdict, the facts as they played out before the Court clearly demonstrated that Pyles' conduct in violation of the Electronic Communications Privacy Act was

18

"engaged in with a knowing or intentional state of mind."  The conduct complained of and for which Pyles was found liable was:

      a.   Accessing Tech Systems' server room without authority to do so;

      b.   Disconnecting the server wires in the server room without authority to do so;

      c.   Deleting data from the company-issued Blackberry;

      d.   Sending e-mails from the company-issued Blackberry without authorization;

      e.   Changing the settings for a finance server for the purpose of preventing access or the proper function of the finance server; or

      f.   Leaving extensive voicemail messages on Tech Systems' voicemail system.

*See* Instruction 24.  Several of these acts occurred clandestinely, in the night, during the weekend, after Pyles had been disciplined, and in apparent retaliation against the Plaintiff.  Other acts occurred after Pyles was notified she would be terminated, again in retaliation against the Plaintiff.  Finally, Pyles deleted data from her company-issued Blackberry, which both the Magistrate Judge, Dkt. No. 103, and the District Judge, Dkt. No. 121, found to be willful and to constitute spoliation.  These acts justify an award of fees against Pyles.

Not only does Defendant's conduct giving rise to this suit justify an award of fees, but so too do her actions during the course of this litigation.  After being told to stop by Ms. Rohall, *see* PE 6, Pyles continued to post and send confidential information.  Even after the institution of formal legal proceedings, Pyles frustrated discovery by deleting information from the Blackberry, *see* e.g. Dkt. Nos. 103, 121, and more generally failed to meaningfully participate in discovery.  *See Declaration of Eric Crusius*.  After obtaining an order granting a spoliation instruction, Plaintiff had to respond to repeated, meritless efforts by the Defendant to overturn that instruction.  *See* Dkt. 104, 106, 111.  Defendant even filed a meritless Motion for Summary

19

Judgment, which was rejected by the Court, *see* Dkt. 86-87, 108, and filed witness and exhibit

lists so irrelevant and otherwise contrary to the Federal Rules of Evidence that Plaintiff's Motion

*in limine* was granted by the Court in its entirety, *see* Dkt. 105.

This civil action, brought about through Pyles' initial deliberate, knowing, and malicious

action, was drawn out and made more time consuming and expensive through her further

deliberate, knowing, and malicious actions over the course of the litigation.  For example, Pyles

filed numerous motions, of which only a fraction were ever noticed for hearing or argued, but to

each Plaintiff was forced to respond in full or else risk the Court's grant for lack of opposition.

*See, e.g.,* Dkt. 74.  Even those motions that were argued were summarily rejected by the Court.

*See, e.g.*, Dkt. 48, 67, 72, 75, 105.  In fact, until trial Defendant's only motion to succeed was her

attorney's motion to withdraw, which was predicated on her repeated lies and threats made

against her own counsel.  *See* Dkt. 30, 31, 35.

Further, Defendant's manifest disregard for the obligations of discovery should entitle

Plaintiff to fees under Federal Rule of Civil Procedure 37(c)(2).  This rule provides:

> (2) Failure to Admit. If a party fails to admit what is requested under Rule 36 and if the
> requesting party later proves a document to be genuine or the matter true, the requesting
> party may move that the party who failed to admit pay the reasonable expenses, including
> attorney's fees, incurred in making that proof. The court must so order unless:
>     (A) the request was held objectionable under Rule 36(a);
>     (B) the admission sought was of no substantial importance;
>     (C) the party failing to admit had a reasonable ground to believe that it might
>     prevail on the matter; or
>     (D) there was other good reason for the failure to admit.

During discovery, Plaintiff served Rule 36 Requests for Admission that asked Defendant

to admit or deny certain facts material to this litigation.  Defendant denied many of these facts as

untrue in her discovery responses, but Plaintiff later offered *unrebutted* testimony to prove these

facts at trial, and the jury clearly accepted as true Plaintiff's evidence in delivering its verdict.

These fraudulent denials included:

10. Admit that after other employees arrived, Anne Rohall began an investigation into the cause of the server problems.
   **Defendant denies the allegations.**

11. Admit that because certain servers were physically disconnected from their outlets, and because one of the servers had its boot programming altered, these servers were intentionally sabotaged by someone.
   **Defendant denies the allegations.**

12. Admit that, as someone with a key to the office building and access to the server room, you were a suspect in Ms. Rohall's investigation.
   **Defendant denies the allegations**

15. Admit that you initially told Ms. Rohall that, upon your arrival to the building early that morning, you saw several cars in the parking lot.
   **Defendant denies the allegations.**

16. Admit that you later told Ms. Rohall that, upon your arrival to the building early that morning, you saw no cars in the parking lot.
   **Defendant denies the allegations.**

17. Admit that you initially told Ms. Rohall that, upon your arrival to the building early that morning, you found the exterior door to the building locked by a deadbolt.
   **Defendant admits the allegations.**

18. Admit that you later told Ms. Rohall that, upon your arrival to the building early that morning, you found the exterior door to the building unlocked and a strange man in the building's lobby.
   **Defendant denies the allegations.**

19. Admit that as a result of this investigation, your employment at Tech Systems was terminated by Ms. Blethen in a phone call on Monday, April 2, 2012, and Ms. Blethen reiterated your termination in a separate phone call the next day.
   **Defendant denies the allegations.**

20. Admit that you committed the sabotage, or directed another individual to commit the sabotage, described in Request for Admission #11.
   **Defendant denies the allegations.**

21. Admit that after your termination, but before your corporate email was disconnected, you emailed sensitive personnel information to employees who were not authorized to receive that information.

      **Defendant denies the allegations.**

24. Admit you divulged non-public information about Tech Systems to certain Tech Systems' employees who were not permitted to receive that information.
      **Defendant denies the allegations.**

26. Admit that after you were fired, you left numerous voice mail messages on Tech Systems' phone voicemail box without identifying yourself.
      **Defendant denies the allegations.**

28. Admit that you posted comments online refuting the charges against you under a pseudonym: Terry Jones.
      **Defendant denies the allegations.**

29. Admit that you posted comments online refuting the charges against you under a pseudonym: Carlis Bender.
      **Defendant denies the allegations.**

30. Admit that you posted comments online refuting the charges against you under a pseudonym: Sonya Bonaparte.
      **Defendant denies the allegations.**

31. Admit that you used online pseudonyms to accuse Nancy Blethen and Anne Rohall of "hating" black people.
      **Defendant denies the allegations.**

32. Admit that after you were fired, you retained Tech Systems' Blackberry assigned to you and deleted all of the information on the Blackberry (or had someone delete the information for you) before returning the Blackberry to Tech Systems.
      **Defendant denies the allegations.**

35. Admit that at least one of the references that you gave to Tech Systems prior to when you were hired was your current fiance who never supervised you.
      **Defendant denies the allegations.**

36. Admit that you did not work for at least one of the companies you claimed to work for on your resume provided to Tech Systems.
      **Defendant denies the allegations.**

37. Admit that you did not obtain any post-college degrees at Strayer University.
      **Defendant denies the allegations.**

38. Admit that you have not been admitted to a hospital in California in the last four months.
      **Defendant denies the allegations.**

39. Admit that you posted comments on Facebook as Carlis MaryKay Bender.
**Defendant denies the allegations.**

While Plaintiff successfully proved all of the above requests for admission as true, even

Defendant's own testimony at trial contradicted her denials with respect to Requests Numbers

35, 36, 37, and 38.  Accordingly, under Rule 37(c)(2), Plaintiff is entitled to at least the fees

associated with litigating these factual issues.  *See also House v. Giant of Maryland LLC*, 232

F.R.D. 257 (E.D.Va. 2005) (assessing fees under Rule 37(c)(2) for matters that had been denied

but were proven at trial).

Moreover, Plaintiff's fees in this matter were reasonable.  *See Declaration of Nancy

Blethen; Declaration of Eric Crusius*.  When compared to prevailing regional fees as reported by

the Laffey Matrix, Plaintiff's fees are equal or less than regional norms.  *Compare* LAFFEY

MATRIX, http://www.laffeymatrix.com/see.html (last visited January 11, 2013), *with Declaration

of Eric Crusius*, Exhibit A.[4]

Based on the statutory scheme noted above, Plaintiff requests a judgment for the costs of

this suit (including its attorneys' fees) in their entirety.  Alternatively, Plaintiff requests the fees

associated with establishing the answers in the Requests to Admit were false.  Wherefore,

Plaintiff prays that it be awarded its fees and costs in the amount of $297,483.68 (already paid),

*see Declaration of Eric Crusius*, Exhibit A, plus an estimated $24,000 in fees for post-trial

motion practice.

---

[4] The Laffey Matrix determines prevailing hourly rates for legal services based on the experience of the attorney.
For information on the experience of undersigned counsel, please *see* Biography of Eric Crusius,
http://centrelawgroup.com/professionals/eric-crusius/; Biography of Dov Szego,
http://centrelawgroup.com/professionals/dov-szego/; Biography of Stephen Ramaley,
http://centrelawgroup.com/professionals/stephen-ramaley/.

**C.     This Court Should Enter A Permanent Injunction Against the Defendant, Or At Least Extend The Existing Injunction**

Apart from the Court's inherent authority to award equitable relief, *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19-20 (1974) (holding that in addition to equitable relief authorized by statute, courts have inherent authority to award additional equitable relief), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), under which the Plaintiff prevailed, allows specifically for an award of "injunctive relief or other equitable relief."

It is worthy of note that this is not a circumstance where the Plaintiff seeks a simple prior restraint of the Defendant's speech.  This doctrine was never intended to be so broad: "As described by Blackstone, the protection against prior restraint at common law barred only a system of administrative censorship."  *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 389-390 (1973).  Instead this is a situation where, after the Court already granted an *ex parte* Temporary Restraining Order, Dkt. 8, with the agreement of the Defendant then entered a *preliminary* injunction to protect against harmful speech and actions, Dkt. 12, and then the aggrieved Plaintiff demonstrated to a jury in an adversarial proceeding that Defendant was liable not only for torts, but also for violations of several laws and harm resulting therefrom.  That aggrieved Plaintiff now seeks continued protection from the Court, in part as a consequence of that speech and those actions already punished through jury verdict and restrained by prior agreement of the Defendant and Order of this Court.[5]

The U.S. Supreme Court has previously declined to consider all injunctions to be prior restraints:

---

[5] Plaintiff requests that any extension of the injunction include a provision that prohibits Ms. Pyles from sharing any of the information outlined in the injunction with third parties for the purpose of its dissemination that would otherwise be prohibited.

Not all injunctions that may incidentally affect expression, however, are "prior restraints" in the sense that that term was used in *New York Times Co.* [*v. U.S.* 403 U.S. 713 (1971)]*,* or *Vance* [*v. Universal Amusement Co., Inc.,* 445 U.S. 308 (1980) (*per curiam*)]. Here petitioners are not prevented from expressing their message in any one of several different ways; they are simply prohibited from expressing it within the 36–foot buffer zone. Moreover, the injunction was issued not because of the content of petitioners' expression, as was the case in *New York Times Co.* and *Vance,* but because of their prior unlawful conduct.

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764 n.2 (1994); *See Schenck v. Pro-Choice Network Of W. N.Y.,* 519 U.S. 357, 374 n. 6 (1997).

Furthermore, courts draw a distinction between speech essentially as yet unspoken, and speech found to be unprotected by the First Amendment or otherwise actionable, such as obscenity, *see Pittsburgh Press*, *supra* 413 U.S. at 390 ("The present order does not endanger arguably protected speech. Because the order is based on a continuing course of repetitive conduct, this is not a case in which the Court is asked to speculate as to the effect of publication."), and defamation, *see Credit Co. v. Russell*, 234 Ga. 765, 778, 218 S.E.2d 54, 62 (1975) (upholding an injunction against statements already found to be defamatory); *O'Brien v. University Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 327 N.E.2d 753 (1975) (If requirements for injunctive relief are met, after a judicial finding of libel; injunction is proper.); *Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 11 (1984) (An injunction issued after "full adversarial proceedings" before a jury is not unconstitutional.); *Wagner Equipment Co. v. Wood*, 2012 WL 4466644, *6 (D.N.M., September 24, 2012). (*"*Because an injunction prohibiting a defendant from repeating a statement determined by a judge or jury to be defamatory would not constitute a prohibited prior restraint of speech under either the First Amendment to the United States Constitution or the New Mexico Constitution, Plaintiff's claim seeking permanent injunctive relief is not prohibited as a matter of law. Accordingly, dismissal

25

of Plaintiff's claim for permanent injunctive relief, at this stage in the litigation, would be

inappropriate.").

### 1. A Permanent Injunction Is Appropriate In This Case

To obtain permanent injunctive relief a party must demonstrate:

1. that it has suffered an irreparable injury;
2. that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
3. that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
4. that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (*citations omitted*).  Notably,

given that *two* injunctions have already been issued in this matter, one with and one without the

Defendant's agreement, "[t]he standard for a preliminary injunction is essentially the same as for

a permanent injunction with the exception that the plaintiff must show a likelihood of success on

the merits rather than actual success.  *Amoco Production Co. v. Village of Gambell*, 480 U.S.

531, 546 n. 12 (1987); *Galaxy Computer Services, Inc. v. Baker,* 2005 WL 2171454, *7

(E.D.Va., 2005).

As part of an award of injunctive and/or equitable relief, this Court should, at a minimum,

require Pyles to delete or otherwise destroy any information still in her possession regarding

Tech Systems, its clients, or its employees.  Plaintiff also requests an order requiring the websites

and other hosts upon which Pyles has posted to remove those posts, and for those websites,

Google, Bing, Yahoo, and other search engines to "delist" those posts and delete all cached

copies.

**a)     Tech Systems Has Suffered Irreparable Injury At The Hands Of The Defendant, and Remedies At Law Cannot Compensate For Tech Systems' Injuries**

The Court anticipated irreparable harm when it granted the earlier temporary injunctions, and such harm was demonstrated by the Plaintiff.  Testimony at trial was rife with instances of what witnesses considered to be irreparable harm — ranging from damage between managers and their subordinates caused by Pyles' forwarding of personnel emails, as testified by Jose Andrade, to ongoing damage to relationships with clients as testified by Anne Rohall.  Rohall testified, also, that when her name or Nancy Blethen's name is searched for on the Internet one of the first results is an accusation that they "hate black people."  This is not to mention the irreparable psychological and emotional harm to various employees as testified by Nancy Blethen.  Even worse, the emails and exhibits submitted by Plaintiff demonstrated that irreparable harm was exactly what the Defendant intended by her actions.  Moreover, as demonstrated in the attached Declarations, Pyles appears to *still* be actively seeking harm to Tech Systems through monitoring and harassment of its employees, clients, and associates.

As Defense Counsel artfully stated at trial, information put on the Internet is there "forever."  In fact, given the prevalence of "caching," copying, and republication, even the removal of Pyles' statements pursuant to an Order of this Court is unlikely to ensure that the same statements are not posted elsewhere already.  Accordingly, Plaintiff is seeking a permanent injunction to redress its harm to the maximum extent allowable under the law and given the realities of the internet.

Additionally, as discussed elsewhere herein, it was not the *granting* of this Court's injunctions in early April 2012 that stopped Pyles from making posts including confidential, proprietary, private, and personal information regarding Tech Systems and its employees — there is ample proof that she continued making posts for several weeks thereafter.  Indeed, online

27

posts against Tech Systems continued to appear through July 2012, and only appeared to cease in the build-up to trial.  *See, e.g., Declaration of Nancy Blethen*.  Now that trial has ended there is evidence that Pyles' has rekindled or renewed her retaliatory campaign against Tech Systems. *See, e.g., Declaration of Nancy Blethen*; *Declaration of Eric Crusius*.  Not the threat of being sued nor even the *fact* of having *lost* the trial deters Pyles — only the threat of punishment by contempt and possible incarceration has the potential to end her campaign of harassment.

Finally, it has taken roughly a quarter-million dollars in fees and nine months for Tech Systems to reach what result it has been able to reach in this matter.  Nonetheless, Pyles appears to be continuing her demonstrated campaign against Tech Systems following the trial of this matter.  *See, e.g., Declaration of Nancy Blethen*; *Declaration of Eric Crusius*.  Were Pyles to resume or escalate her attacks on the Plaintiff, or even to simply duplicate the postings for which a jury of peers has awarded $225,000 worth of damage (ignoring the awards for Trespass and Computer Fraud and Abuse, arguably unrelated to the statements Pyles posted online) it would likely take another quarter-million dollars and 9 months for Tech Systems to again prove what it has already proven — that Pyles, a disgruntled former employee, is willing to go to great lengths to do harm to Tech Systems and its employees.  To quote the relief upon the door above this Court, "Justice Delayed is Justice Denied."  Plaintiff posits that justice paid for twice is also justice denied.  Having already proven once to a jury that Pyles' misuse of information obtained through her employment is harmful and wrongful, this Court should refrain from requiring Plaintiff, at great expense of time and treasure, to do so again.

**b)      Balancing the Equities Between the Parties, An Equitable Remedy is Warranted, and The Public Interest Favors Granting a Permanent Injunction**

Bluntly, there is no harm to Pyles in the imposition of a permanent injunction, and there is no benefit in permitting Pyles to continue her campaign against Tech Systems.  A jury having found Pyles' emails, posts, and actions impermissible under several theories and statutes, there is no First Amendment harm caused by an injunction.  Pyles' emails, posts, and actions do not serve any legitimate purpose of her own either; they do not help her seek employment, nor do they advance any other permissible goal.  On the other hand, this Court heard and the circumstances make obvious Tech Systems' interests in enjoining continuation or repetition of Pyles' emails, posts, and actions.  Tech Systems has a business interest in protecting its employees from the dissemination of confidential information.  Tech Systems also has a business interest in protecting the interests of its clients, most notably the Federal government, in the preservation of their confidential and proprietary information, as well as a need to maintain security clearances as part of their work for the government.  Not least, Tech Systems has a business interest in maintaining its relationships with existing clients, and in maintaining its reputation in order to obtain additional clients and contracts.  Pyles' emails, posts, and actions against Tech Systems threatened and continue to threaten these and other legitimate business interests.

The public also has legitimate interests in enjoining Pyles.  As testimony at trial showed, Tech Systems works primarily for the Federal government maintaining military bases.  To the extent that Pyles may in the future interfere with Tech Systems' operations, she will be interfering with the efficient administration of government contracts and, consequently, with the return on investment for U.S. taxpayers.  Moreover, the public has an interest in the efficient administration of justice.  As stated above, throughout this litigation Pyles has demonstrated her

29

commitment to doing harm to Tech Systems.  In the event that she continues to pursue this goal, the Court would benefit immensely from conducting a mere contempt hearing rather than a new jury trial.

Finally, this Court should not overlook the fact that Tech Systems, a company employing hundreds of people, *is the public*.  Pyles sought to harm Tech Systems by revealing the private and confidential information of Tech Systems' employees, not only the Plaintiff Tech Systems.

### 2.    At A Minimum, Given The Demonstrated Harm And Other Circumstances Of This Case, This Court Should Extend The Existing Injunction For Not Less Than Three (3) Years

Of course, Tech Systems has reserved its right to sue regarding defamatory, or otherwise actionable conduct by Pyles, but it is hoped that the Court will act to minimize such risks. Should this court be concerned about the effects of a "permanent" injunction, or the terms of the injunction put in place prior to trial, Plaintiff respectfully posits and requests that *some* injunctive relief is appropriate and should be granted.  To the extent that the Court feels that Pyles should be subject to an injunction only for a definite, limited period of time, Plaintiff requests that such relief be granted for a period of no less than three (3) years.  During that time Tech Systems will be able to consolidate its relationships with clients and employees and, assuming the Court requires Pyles to destroy any proprietary, private, or confidential information still in her possession, may be able to take steps to mitigate the threat of harm posed by Pyles' animus.

### CONCLUSION

For the foregoing reasons, Plaintiff Tech Systems, Inc., respectfully requests that Defendant Lovelen Pyles' Motion to Strike its Fiduciary Duty claim be denied, that it be awarded permanent or continuing injunctive relief, that it be awarded its reasonable fees, costs,

and expenses incurred in these proceedings, and that this Court award such other and further

relief as is meet and proper.


Dated: Vienna, Virginia
        January 11, 2013

                                        Respectfully submitted,

                                        _____/s/_____.
                                        Eric Crusius (VA Bar No. 77860)
                                        Dov Szego (VA Bar No. 44586)
                                        Stephen Ramaley (VA Bar No. 82549)
                                        Centre Law Group, LLC
                                        *Attorneys for Plaintiff*
                                        1953 Gallows Road, Suite 650
                                        Vienna, Virginia 22182
                                        Telephone: (703) 288-2800
                                        Facsimile: (703) 288-4868
                                        ecrusius@centrelawgroup.com
                                        dszego@centrelawgroup.com
                                        sramaley@centrelawgroup.com

**CERTIFICATE OF SERVICE**

I certify that on this ___11th___ day of January, 2013, I electronically filed a copy of the

attached Memorandum of Law using the CM/ECF system, which will send a notification of

electronic filing to:


      Augustine H. Kim
      Antonio G. Vann
      Counsel for the Defendant Lovelen Pyles
      The Metropolitan Law Group
      8230 Boone Blvd., Ste 370
      Vienna, VA 22182
      Voice: (703) 288-3215
      Fax: (703) 288-3214
      Email: akim@metlawgrp.com
      Email: avann@metlawgrp.com

                          By: ____/s/_____
                          Eric Crusius (VA Bar No. 77860)
                          Dov Szego (VA Bar No. 44586)
                          Stephen Ramaley (VA Bar No. 82549)
                          Centre Law Group, LLC
                          *Attorneys for Plaintiff*
                          1953 Gallows Road, Suite 650
                          Vienna, Virginia 22182
                          Telephone: (703) 288-2800
                          Facsimile: (703) 288-4868
                          ecrusius@centrelawgroup.com
                          dszego@centrelawgroup.com
                          sramaley@centrelawgroup.com