IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| TECH SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12-CV-374 (GBL/JFA) |
| | ) |
| LOVELEN PYLES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Tech Systems, Inc.'s ("Tech Systems" or "TSI") Motion for Attorney's Fees. (Doc. 146.) This case involves Tech Systems' claims against Ms. Lovelen Pyles, a former Human Resources Manager that sabotaged Tech Systems' computer servers and disclosed confidential information in violation of company policy. Tech Systems brought statutory and common law claims involving trespass, breach of fiduciary duty, and the misuse of computers and other electronic equipment. A jury returned a verdict in favor of Tech Systems against Defendant Lovelen Pyles on five counts and the Court entered a judgment. (Doc. 133.) Tech Systems subsequently filed this Motion for Attorney's Fees.

The issue before the Court is whether Tech Systems is entitled to recover fees on its statutory and common law claims. The Court holds that Tech Systems is entitled to recover attorney's fees for two reasons. First, Tech Systems is entitled to recover its total cost of litigation because it prevailed on statutory claims that provide for recovery of the costs of the entire suit. Second, Tech Systems is entitled to the requested amount because their claimed fees and number of attorney's hours represent a reasonable number of hours at a reasonable rate.

## I. BACKGROUND

Tech Systems brought this action against Ms. Pyles alleging that she sabotaged the Tech Systems computer network and disclosed confidential information to employees, vendors, and other government contractors. After investigating the incident, Tech Systems terminated Ms. Pyles's employment. Tech Systems employed Ms. Pyles from October 17, 2012 until April 4, 2012 as its Human Resources Manager. (Compl. ¶ 11.) Ms. Pyles agreed in writing to abide by policies contained in TSI's employee handbook when she joined Tech Systems. (*Id.* ¶ 18.) The handbook noted that Tech Systems's employees were prohibited from distributing confidential information pertaining to its business, its vendors and suppliers, and people not employed by Tech Systems. (*Id.* ¶ 19.) Further, TSI employees were permitted to discuss work matters only with other TSI employees who have a specific business reason to know or have access to such information. (*Id.*)

On April 1, 2012, Jose Andrade, the head of Tech Systems's IT department, discovered that the computer server was down. (*Id.* ¶ 29.) An internal investigation revealed that someone (a) compromised the secure server room at Tech Systems's offices and physically disconnected many of the components and (b) accessed the finance server and changed the BIOS boot-up information and altered the start-up sequence so that the server would not load properly. (*Id.* ¶ 32.) TSI investigated the matter and later concluded that Ms. Pyles sabotaged the servers, an act that disrupted the company's computer systems. (*Id.* ¶ 34.) TSI terminated Ms. Pyles the following day and directed her to return her company-issued Blackberry phone. (*Id.* ¶ 36.) After her termination, Ms. Pyles forwarded emails containing TSI's confidential information to other employees, vendors, and customers that she received in her role as HR Manager. (*See* Mot. for Spoliation Findings Ex. E, Doc. 93-20.) TSI alleged that Ms. Pyles deleted these emails and other information from her Blackberry before returning it to TSI, where such information, had it not been deleted, would have contained evidence of incriminating emails sent from the device. After a hearing on this matter of

spoliation, Magistrate Judge Anderson granted TSI's Motion for Spoliation Finding and ordered that a jury instruction be given informing the jury that TSI was entitled to consider an adverse inference against Ms. Pyles because of the destruction of evidence.[1] (Order at 3 ("Spoliation Order"), Doc. 103.)

The Court held a two-day trial on TSI's claims. At the conclusion of trial, a jury returned a verdict for Tech Systems against Ms. Pyles on all counts submitted to the jury[2] and awarded Tech Systems $300,000 in compensatory and punitive damages. (Jury Verdict Form at 1-3, Doc. 133.) Following the conclusion of the trial, the Court held a hearing on February 8, 2013, denying TSI's Motion for Attorney's Fees because it failed to properly support its request and directed Tech Systems to file a new Motion for Attorney's Fees. (*See* Doc. 145.) Tech Systems subsequently filed the instant Motion for Attorney's Fees seeking the total sum of $342,819.55 based on both the jury's favorable verdict as well as Federal Rule of Civil Procedure 37. The Court now rules on TSI's renewed Motion for Attorney's Fees.

## II. STANDARD OF REVIEW

Traditionally, under the "American Rule," each party is responsible for their attorney's fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Thus, a prevailing litigant is generally not entitled to recover attorneys' fees from the non-prevailing litigant.

---

[1] The instruction provided the inference "That, both before and after her termination from employment with that company, Defendant Lovelyn Pyles sent emails using the Blackberry provided to her for use connected to her employment by Plaintiff Tech Systems, Inc.; [t]hat at least some of those emails included confidential information that Defendant Lovelyn Pyles was prohibited from distributing; [t]hat, as a result of the employment agreement signed by her, Defendant Lovelyn Pyles knew that she was prohibited from distributing the information included in those emails; [t]hat Defendant Lovelyn Pyles deleted those emails and formatted the Blackberry to prevent their use against her in this lawsuit." (Spoliation Order at 3.)

[2] Counts Three and Six were not presented to the jury. During its case-in-chief, TSI orally moved to withdraw Count Six, Misappropriation of Trade Secrets under the Virginia Uniform Trade Secrets Act. At the close of Plaintiff's case-in-chief, the Court granted Defendant's Judgment as a Matter of Law on Count Three, breach of contract. (*See* Doc. 128.)

3

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007). However, there are two exceptions to this rule. The first is when attorney's fees are provided by a statute. *Id.* The second exception to the American Rule arises when a contract calls for recovery of attorney's fees by the prevailing party. *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006). The party seeking to recover attorney's fees has the burden of showing they are entitled to fees and the amount they seek is reasonable. *See Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F. Supp. 2d 533, 536 (E.D. Va. 2012).

If the Court finds the prevailing party entitled to recover attorneys' fees, the Court must undertake a three-step analysis to ensure the fees awarded are reasonable. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). First, the Court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Second, the Court should subtract fees for hours spent on unsuccessful, unrelated claims. *Id.* at 244 (citing *Grissom*, 549 F.3d at 321). Third, the Court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the prevailing party." *Id.* (citing *Grissom*, 549 F.3d at 321).

### III. DISCUSSION

The Court grants TSI's Motion for Attorney's Fees in the total amount of $342,819.55 for two reasons. First, Tech Systems is entitled to attorney's fees and the costs of litigation by statute. Second, Tech Systems's attorney's fees request is for a reasonable number of hours at a reasonable rate. This Court does not need to apply a separate reduction for successful common law claims because according to both the Virginia Computer Crimes Act and the Electronic Communications Privacy Act, the prevailing plaintiff can recover for the costs of the entire suit and other litigation costs reasonably incurred.

#### A. TSI is entitled to Recover Attorney's Fees and Costs

Plaintiff Tech Systems is entitled to reasonable attorney's fees and costs for its statutory and common law claims pursuant to the Virginia Computer Crimes Act ("VCCA") and the Electronic Communications Privacy Act ("ECPA").[3]

*i. Virginia Computer Crimes Act*

Tech Systems is entitled to reasonable attorney's fees and the costs of litigation pursuant to the VCCA. The VCCA states that:

> It shall be unlawful for any person, with malicious intent, to:
> 1. Temporarily or permanently remove, halt, or otherwise disable any computer data, computer programs or computer software from a computer or computer network;
> 2. Cause a computer to malfunction, regardless of how long the malfunction persists; [or]
> 3. Alter, disable, or erase any computer data, computer programs or computer software.

VA. Code. Ann. § 18.2-152.4. A reasonable jury found Ms. Pyles liable for sabatoging and disabling TSI's computer server which caused the server to malfunction. In denying Defendant's Renewed Motion for Judgment as a Matter of Law, the Court found the jury's verdict sufficiently supported by the evidence, including the adverse inference against Ms. Pyles for erasing the data on her Blackberry. Therefore, her argument that attorneys' fees should be denied, because there was insufficient evidence to find her liable under the VCCA, is unpersuasive.

TSI is entitled to recover the costs of the suit since Ms. Pyles's acts were committed with malicious intent. The VCCA states:

> Any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent may sue

---

[3] The Court refrains from finding that TSI should recover attorneys' fees in violation of Federal Rule of Civil Procedure 37(c)(2). TSI failed to present evidence of the requests for admissions they allege Ms. Pyles denied, which they later proved to be true. Without the specific requests comprising the crux of Plaintiff's argument, the Court is unable to determine whether Rule 37 is a proper basis for an attorneys' fees award here. However, because the Court finds that TSI is statutorily entitled to the entirety of the reasonable costs of litigation, TSI's omission on this argument does not affect the Court's opinion.

therefor and recover for any damages sustained and the costs of suit. Without limiting the generality of the term, "damages" shall include loss of profits.

Va. Code Ann. § 18.2-152.12(A). Since the jury found that Ms. Pyles's actions fall under one of the three aforementioned clauses in the Virginia Computer Crimes Act, TSI is entitled to attorney's fees for the cost of the suit. It is not enough for Ms. Pyles to violate the VCCA in order for TSI to recover the cost of ligation. TSI must show that Ms. Pyles acted with malicious intent. TSI argues that the jury's award of punitive damages makes apparent its finding that there was malicious intent. (*See* Pl's Mem. Supp. Mot. Att'y Fees at 10, Doc. 146-1.) The Court holds that the jury's award demonstrates the jury found malicious intent. The jury was instructed that liability on this claim required TSI demonstrate that Ms. Pyles committed any of the prohibited acts with malicious intent. (Jury Instruction No. 17, Doc. 132-1.) Therefore, TSI is entitled to recover the costs of not only attorneys' fees but also the cost of litigation.

### ii. Electronic Communications Privacy Act

TSI is also entitled to reasonable attorney's fees and the costs of litigation under the ECPA. A person violates the ECPA by:

1. Intentionally accessing, without authorization a facility through which an electronic communication service is provided; or
2. Intentionally exceeding an authorization to access that facility and thereby obtaining, deleting, or preventing authorized access to a wire or electronic communication while it is in electronic storage in such a system.

18 U.S.C. § 2701. The ECPA further provides, within the court's discretion, a right to reasonable attorney's fees and other litigation costs reasonably incurred where the conduct constituting the violation is engaged in with a knowing or intentional state of mind. 18 U.S.C. § 2707(b)(3). Ms. Pyles was found liable for violating this Act by the following conduct: accessing TSI's server room without authority to do so, deleting data from her company-issued Blackberry, and sending emails from the company-issued Blackberry without authorization. The record demonstrates that the jury found Ms. Pyles committed these acts intentionally. The jury awarded punitive damages for the

ECPA violation after receiving instructions that punitive damages may be assessed if it found her actions willful or intentional. (Jury Instruction No. 26, Doc. 132-1.) Accordingly, the jury's verdict that Ms. Pyles acted intentionally in violating the ECPA triggers the fees and costs provision of the ECPA. Therefore, the Court holds that the ECPA provides TSI recovery of the entire cost of litigation.

### iii. TSI's Remaining Claims

The Court further finds that TSI may recover for its remaining claims, pursuant to both statute and common law, as well because TSI's success on its VCCA and ECPA claims entitled TSI to recover the entire cost of litigation. Even aside from those statutory provisions for the entire cost of the litigation, parsing out fees for claims other than the VCCA and ECPA would prove difficult. When successful and unsuccessful claims are related, much of the counsel's time is devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This occurs when separate claims contain a "common core of facts." *Id.*

Although all of TSI's claims presented to the jury were successful, some claims do not provide an independent basis for an attorneys' fees award. However, the VCCA and ECPA claims share a common core of facts with the remainder of TSI's successful claims. First, the Computer Fraud and Abuse Act ("CFAA") violation shares common facts with the VCCA violation. The jury found that Ms. Pyles violated the CFAA by intentionally accessing TSI's computer systems without authorization which caused damage to the system. (*See* Verdict Form at 2, Doc. 133.) Ms. Pyles's acts violated the CFAA because the computers and systems accessed by Ms. Pyles were protected computers as defined in the CFAA. *See* 18 U.S.C. §§ 1030, *et seq.* This prohibition is similar to the VCCA prohibition's on temporarily or permanently halting, altering or disabling any computer data, computer programs or computer software. Va. Code Ann. § 18.2-152.4. As noted above, the

7

VCCA allows an aggrieved party to recover the costs of the suit for an act committed with malicious intent. Va. Code Ann. § 12.2-152.12. Accordingly, the commonality of those facts in the VCCA and CFAA cuts against a reduction of a fee award for the CFAA claim.

Second, Ms. Pyles violated Count II, Breach of Fiduciary Duty, by forwarding confidential information in emails from her company-issued Blackberry to other employees, vendors, and customers after she was terminated and deleting these emails from the company Blackberry. (*See* Mot. for Spoliation Findings Ex. E, Doc. 93-20.) These actions coincide with those prohibited by the ECPA. *See* 18 U.S.C. § 2701 (prohibiting a person from intentionally accessing, without authorization, a facility through which an electronic communications service is provided or intentionally exceeding authorization to access that facility and obtain, delete or prevent authorized access to a wire or electronic communication while it is in electronic storage in such a system). In this case, when Ms. Pyles accessed the server without authorization, sent emails from her company Blackberry, and subsequently erased emails from the Blackberry after she was terminated, she exceeded TSI's authorization by both deleting and preventing authorized access by TSI to their electronic communication. As such, the basis of Ms. Pyles's breach of fiduciary duty shares a common core of facts with the ECPA violation.

Finally, the trespass claim shares common facts with the VCCA violation. The jury heard evidence that Ms. Pyles secretly entered the secure server room at TSI's offices and physically disconnected many of the components, accessed the finance server and changed the BIOS boot-up information, and altered the start-up sequence so that the server would not load properly. These acts coincided with those demonstrating the VCCA violation in that these same acts also demonstrated the unlawful removal or hating of computer data, programs, or software. *See* Va. Code. Ann. § 18.2-152.4. When Ms. Pyles unlawfully entered and compromised the secure server

room at TSI, she halted TSI's computer server. As such, Ms. Pyles's violation of Count V shares a common core of facts with the VCCA.

Even if neither the VCCA nor the ECPA provided for the reasonable cost of litigation, then TSI would be entitled to recover attorneys' fees for their successful common law claims in which attorneys' fees are not recoverable because much of Plaintiff's counsel's time was devoted generally to the litigation as a whole and these separate common law claims share a "common core of facts" with the successful statutory claims. *Hensley*, 461 U.S. at 435.

For these reasons, the Court finds that TSI is entitled to attorneys' fees for all successful claims and the costs of litigation.

### B. TSI's Fee Request is Reasonable

Having determined that TSI is entitled to recover attorney's fees, the Court further finds the requested amount is reasonable based on the *Johnson/Barber* factors for reasonableness, TSI's affidavits and the industry 2011 Range of Hourly Rates in Northern Virginia. In assessing the reasonableness of attorney's fees, a court must first determine the lodestar amount, which is the reasonable hourly rate multiplied by hours reasonably expended, and apply the twelve *Johnson/Barber* factors. *Robinson*, 560 F.3d at 243-244 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)) (explaining that the Fourth Circuit adopted the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)). Next, the court typically subtracts the fees for hours spent on unsuccessful and unrelated claims. *Robinson*, 560 F.3d at 244. Once the court has subtracted the fees incurred for unsuccessful and unrelated claims, it awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff. *Id.* If the lodestar figure is unreasonably high or low, the court can adjust the fee in accordance with the *Johnson* factors. *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1025 (E.D. Va. 1994).

The party seeking an award of attorney's fees should submit evidence supporting the hours worked and the rates claimed. *Hensley*, 461 U.S. at 433. If the documentation of hours is inadequate, the court may reduce the award accordingly. *Id.* In addition to the attorney's own affidavits detailing the hours worked and rates claimed, the party seeking an award of attorney's fees must produce satisfactory evidence of prevailing market rates in the relevant community for the work for which he seeks an award. *Plyers v. Evatt*, 902 F.2d 273, 277 (4th Cir. 2000).

In determining the reasonableness of attorney's fees, the Court must determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. *Robinson*, 560 F.3d at 244. In assessing the reasonableness of a fee request, the Court considers:

> (1) The time and labor extended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Robinson*, 560 F.3d at 243-244 (citing *Barber*, 577 F.2d at 226 n.28). The party seeking attorneys' fees bears the burden of submitting documents showing the hours worked and hourly rates. *Hensley*, 461 U.S. at 433. A court is not obligated to consider each *Johnson/Barber* factor individually, but rather, the "determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson*, 560 F.3d at 244.

In analyzing TSI's request for attorney's fees using the *Johnson* factors, the Court finds that TSI provided sufficient invoices of the time and labor extended by their attorneys. These invoices included billable rates of each attorney and the number of hours per assignment. TSI submitted a reasonable number of hours in their motion of 1,069 hours. (Pl's Mem. Ex. A, Doc. 3.) This time

was spent litigating five successful claims. (*See* Doc. 136.) The Court finds the submitted number of hours were reasonable based on the length of the litigation, the time spent in discovery, filing of a spoliation motion in addition to addressing summary judgment, and preparing for and conducting trial.

TSI also submitted reasonable rates in their request for attorneys' fees. As directed by *Robinson*, the Court considers the customary fee for like work in Northern Virginia. In support of its position, TSI provided an affidavit from Stephen G. Cochran, an attorney based in northern Virginia with more than forty years of experience practicing law. (Pl.'s Mem. Ex. A., Doc. 146-2). In his affidavit, Mr. Cochran attested to the reasonableness of both the rates charged and hours expended by Plaintiff's counsel. For comparison purposes, Mr. Cochran included a table of the 2011 Range of Hourly Rates in Northern Virginia, set forth below, for complex and civil litigation.[4]

**2011 Range of Hourly Rates in Northern Virginia**

| Years of Experience | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
|---|---|---|---|---|---|
| Hourly Rate | $250-435 | $350-600 | $465-640 | $520-770 | $505-820 |

After considering the billing statements included in Plaintiff's Motion, the Court finds that TSI's invoices of their attorneys' fees demonstrate the reasonableness of their rates. The charged fees in this case are as set forth below:

**Centre Law Group Hourly Rates**

| Attorney | Experience (in Years) | Hourly Rate |
|---|---|---|
| Eric Crusius | 24 | 375.00 |
| Julie Nichols | 5 | 325.00 |
| James S. Phillips | 31 | 475.00 |
| Stephen Ramaley | 1 | 280.00 |

---

[4] The Court accepted the same chart in support of an attorneys' fees award in *Vienna Metro v. Pulte Home Corp.*, No. 1:10-cv-502.

11

The hourly rates for TSI's counsel are well within the applicable rate ranges based on the 2011 Average Hourly Rates in Northern Virginia, and Mr. Cochran explains that these rates are reasonable and similar to those charged within the geographic area. Defendant offered no argument at any point during post-trial motions or oral arguments that Plaintiff's rates were unreasonable. As such, the Court finds that TSI submitted a reasonable rate for its hourly rates and number of hours.

### ii. Reduction in Rates for Unrelated Claims

The Court finds that the third step under *Robinson*, a reduction in rates for unsuccessful claims is unnecessary in this dispute. According to *Robinson*, the court should subtract fees for hours spent on unsuccessful, unrelated claims. *Robinson*, 560 F.3d at 244. Here, two of TSI's claims were unsuccessful: Count III, Breach of Contract, and Count VI, Misappropriation of Trade Secrets. Both claims arose from facts surrounding Ms. Pyles's sabotage of the TSI server and the unauthorized emails that Ms. Pyles sent once she was terminated from her position at TSI. Although Counts III and VI were unsuccessful, they were still related to TSI's successful claims and shared a common core of facts. As such, the Court found no reason to subtract unsuccessful claims.

## IV. CONCLUSION

The Court grants Plaintiff Tech Systems's Motion for Attorney's Fees and for the costs of litigation and awards $342,819.55 in litigation fees. First, the Court concludes that Tech Systems is entitled to reasonable attorney's fees and costs based on the Virginia Computer Crimes Act and the Electronic Communications Privacy Act's provisions awarding the costs of litigation to the prevailing party. Second, TSI's fee request was reasonable based on the time expended and the range of hourly rates in Northern Virginia. Third, TSI's claims are related and contain a common core of facts. As such, by recovering under the Virginia Computer Crimes Act, TSI can recover the entire cost of litigation. Accordingly, it is hereby

**ORDERED** that Plaintiff Tech Systems Inc.'s Motion for Attorney's Fees is **GRANTED**. The Court will direct the Clerk to enter a separate judgment in favor of Tech Systems, Inc. and against Defendant, Lovelyn Pyles in the amount of three hundred forty two thousand eight hundred nineteen dollars and fifty-five cents ($342,819.55). This case is now closed and **ORDERED** stricken from the active court docket.

**IT IS SO ORDERED.**

ENTERED this ___ day of August, 2013.

Alexandria, Virginia
8 / / 2013

/s/
Gerald Bruce Lee
United States District Judge